## RICHARDS v. GREASON.

(Supreme Court, Appellate Division, First Department.　October 23, 1908.)

PLEADING (§ 166*)—REPLY—AUTHORITY TO REQUIRE.

An executor, having no personal knowledge of the transactions involved in a suit against him for fraud committed by testator, and setting up in defense orders and decrees in proceedings in which plaintiff and testator were parties and sealed instruments executed by plaintiff, based on the validity of the instrument attacked for fraud, which proceedings, orders, decrees, and instruments established knowledge and affirmance, and on which, with such knowledge and affirmance, sums of money were paid and received, was entitled to a reply, within Code Civ. Proc. § 516, providing that when an answer contains new matter the court may, in its discretion, on defendant's application, direct a reply.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 321½ ; Dec. Dig. § 166.*]

Appeal from Special Term.

Action by James J. Richards, Jr., against John R. Greason, Jr., sole executor of James J. Richards, deceased. From an order of the Special Term, denying a motion to compel plaintiff to reply to a defense contained in the answer, defendant appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Goeller, Shaffer & Eisler (Jacob H. Shaffer, of counsel), for appellant.
Wetherhorn & Link (Ralph Link, of counsel), for respondent.

CLARKE, J. The plaintiff brings an action against the executor of his father's estate to recover $30,000 for a fraud claimed to have been committed upon him by the defendant's testator in his lifetime. The complaint alleges that the father of the plaintiff died on or about July 18, 1907, leaving a last will and testament, which was duly probated about the 9th of October, 1907, which named the defendant as executor, and who thereafter received letters testamentary; that on

or about November 17, 1898, one George W. Hojar, a maternal grand-father of the plaintiff, died leaving a will wherein a two-ninths share of his estate, the value of which was about $60,000, was devised and· bequeathed to plaintiff; that about November 21, 1903, the plaintiff, induced by the false representations of his father that a certain paper was merely a power of attorney to transact and attend to matters re-lating to the estate of said George W. Hojar, was induced to sign, execute, and deliver said paper, which contained, in addition to the power of attorney, an assignment and transfer of a one-half share·of his interest in his grandfather's estate, amounting in value to the sum of $30,000; that by reason of said paper his father was enabled to col-lect and receive a one-half share of plaintiff's interest in said estate, amounting to said sum, which he now seeks to recover from the ex-ecutor.

The answer, by way of a separate and distinct defense, alleges that the plaintiff commenced an action in partition on the 25th of January, 1905, of the real property left by his grandfather, in which action his father, James J. Richards, Sr., was made a party defendant, and' that in said action said Richards, Sr., appeared and served a demur-rer; that on or about the 15th of February, 1905, plaintiff served upon his father a revocation of the power of attorney embraced in the instrument of November 21, 1903 (a copy of the last above-mentioned instrument and of the revocation attached to the answer); that on or about the 30th of June, 1905, the said partition action was settled, and agreements were entered into between the plaintiff and his father and the Julian Company, the corporation mentioned in said agreement, wherein and whereby the said Julian Company contracted to acquire the interest of the plaintiff and his father in the said real property which was the subject of the partition action; that as part of the settlement of said action the said plaintiff insisted on receiving from his father an agreement to deliver to plaintiff, on the closing of title under said contract, a general release of all claims and demands which his father might have against plaintiff; that at the time of said settle-ment the plaintiff was represented by an attorney, who was present and negotiated the settlement on behalf of the plaintiff, who was also present at said time (copies of all of these papers are attached to the answer); that thereafter, and on the 30th of September, 1905, a further agreement· was entered into by plaintiff and his father, plain-tiff's attorney and himself being present, which is also attached to the answer; that thereafter, and in accordance with the terms of said agreements, the title to the premises therein described was closed on or about the 12th of January, 1906, which closing the plaintiff attend-ed with his attorney, and the amount due each, respectively, was de-termined, and there was paid to each the sum of $18,737.38 for their respective interests, to which payment plaintiff assented and agreed, and his father delivered the general release in accordance with his agreement; that on the 29th of September, 1905, the trustee under the last will and testament of plaintiff's grandfather presented his petition to the Surrogate's Court in the county of Kings, together with his final account, and in such proceedings the plaintiff was made a party and duly appeared; that Richards, Sr., and others, filed an-

swers, and the issues raised by such answers came on for hearing on the 31st day of October, 1905, and on that day plaintiff's father duly proved in said proceeding the said assignment or conveyance, being the paper which the plaintiff here claims was fraudulently obtained from him; that the only basis for any interest of the plaintiff's father in and to the moneys affected by the said accounting was the said paper; that thereafter, and on or about the 14th day of December, 1905, a decree was made in said proceeding, a copy of which is annexed to the answer; that in accordance with the terms of said decree the trustee paid over to plaintiff's father the sums in said decree so mentioned, said payment being made and such decree entered with the consent and approval of the plaintiff; and the answer further alleges that by reason of the foregoing the said plaintiff ratified and approved the assignment mentioned in the complaint herein, and waived such fraud as alleged in the complaint, if any there were.

The defendant moved that the plaintiff be compelled to reply to the matters so set up in the separate defense which he claimed established a complete waiver by the plaintiff of any fraud as set up in the complaint. The learned Special Term having denied the motion, the defendant appeals.

Section 516 of the Code of Civil Procedure provides that:

"Where an answer contains new matter constituting a defense by way of avoidance, the court may, in its discretion, on the defendant's application, direct the plaintiff to reply to the new matter."

It would seem that where an executor, who can have no personal knowledge of transactions involved, is sued for a fraud alleged to have been committed by his decedent in his lifetime, and in his defense sets up the orders and decrees of the courts made in proceedings in which plaintiff and decedent were parties, and a series of sealed instruments, duly executed and acknowledged by the plaintiff, based upon the validity of the instrument attacked, which proceedings, orders, decrees, and instruments tend to establish knowledge and affirmance, and upon which, with such knowledge and affirmance, large sums of money have been paid and received, he is entitled to know before the trial how the plaintiff proposes to meet such a defense. These matters must be entirely within the knowledge of the plaintiff, and copies of the papers relied upon are attached to the answer, and the matters relied upon are stated with such particularity as to be readily met and answered, if answer there be.

We are of the opinion that a case is presented clearly within the provisions of the section of the Code giving authority to compel a reply, and that in the exercise of a sound discretion the motion should have been granted.

It therefore follows that the order appealed from should be reversed, with $10 costs, and the motion granted, with $10 costs and disbursements to the appellant. All concur.